**NATIKA GANT,**

       **Plaintiff,**

**v.**                              **Case No.: 8:07-cv-2086-T-33EAJ**

**KASH n' KARRY FOOD STORES, INC. d/b/a/**
**SWEETBAY SUPERMARKETS,**

       **Defendant.**
_____/

## ORDER

Natika Gant sues Kash n' Karry Food Stores, Inc., d/b/a Sweetbay Supermarket, ("Sweetbay") for retaliation under 42 U.S.C. § 1981, 42 U.S.C. §2000e-2(a)(1) ("Title VII"), and Florida Statute § 760, the Florida Civil Rights Act ("FCRA"). (Doc. 13.) Gant alleges that a fellow employee used racial epithets and racially charged language. Gant claims that after she complained about the fellow employee's conduct and in retaliation for her complaint, Sweetbay terminated her employment. Gant withdrew claims alleging racial discrimination and harassment because "the conduct at issue . . . did not rise to the level of actionable harassment." (Doc. 50 at p. 1.)

Sweetbay moves for summary judgment (the "Motion for Summary Judgment," Doc. 33) and argues that Gant fails to state a *prima facie* case for retaliation. Further, Sweetbay

argues, even if Gant states a *prima facie* case, that Sweetbay demonstrates a legitimate, non-discriminatory reason for terminating Gant and that Gant cannot demonstrate that the proffered reasons were pretextual.

## I.     Factual and Procedural Background[1]

Gant worked for Sweetbay as a Customer Service Manager.  In May 2007, Gant was transferred to the Harney Road store where she worked with Sweetbay Evening Manager Robert Price until her termination in August 2007.  Gant alleges that she was terminated in violation of Title VII, Section 1981, and the FCRA because she complained about Price's racially charged comments and race based conduct.

Gant's central allegation and the impetus for her lodging the complaint was an upsetting event in July of 2007 when Price used a particularly egregious racial epithet in Gant's presence.  While both were in the "manager's office," Gant heard Price say "I can't stand ghetto black niggers."  Price denies that he ever used the epithet.  Gant alleges that before this event, Price had used racially charged language or made decisions based on race. Specifically, Gant alleges that she witnessed an event where Price ask an African-American employee to remove her head scarf because "this isn't the ghetto."  Further, Gant alleges that she was "aware" of three other events where Price engaged in racial harassment: (1) Price

---

[1] Consistent with summary judgment standards, the facts stated are either undisputed or stated in a light most favorable to Gant.  <u>See</u> <u>White v. Mercury Marine Div. of Brunswick, Inc.</u>, 129 F.3d 1428, 1430 (11th Cir. 1997).

commented about an African-American employee's "black ghetto booty"; (2) Price suggested that the "MLK" (Dr. Martin Luther King, Jr.) store would be a more appropriate place for another African-American employee to work because of the employee's hairstyle; and (3) Price requested that an African-American employee watch African-American customers, but not white customers, because Price believed that African-Americans steal.

In late July, Gant complained about Price's conduct to the Harney Store's manager, to Sweetbay Human Resources, and to Sweetbay District Manager David Gamble. Gant was told that Sweetbay would begin an investigation. Gant continued to work with Price on occasion until August 19, 2007, when Gant became upset after a disagreement with Price. After the disagreement, Gant contacted another Sweetbay manager for advice and assistance. Following the August 19 incident, Gamble terminated Gant for "conduct unbecoming a manager."

Sweetbay claims that Gant violated a Sweetbay policy that requires confidentiality about ongoing investigations because Gant divulged to the other manager information about her complaint against Price. Gant then filed this action.

## II.     Summary Judgment Standard

A motion for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

demonstrate that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing that no genuine issues of material fact remain. <u>Celotex</u>, 477 U.S. at 323. For summary judgment purposes, the court examines the evidence in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

A factual dispute exists about whether Price ever used racially charged language in general and whether he said any or all of the specific things that Gant alleges. Specifically, Price denies that he used the term "nigger," but admits that he used the term "ghetto." Gant alleges that his denial serves only to protect his reputation. However, this factual dispute is immaterial. The Court's review assumes that each event that Gant alleges actually occurred and concludes that, even if Price behaved exactly the way that Gant described, the conduct fails to constitute actionable racial harassment sufficient to serve as a basis for Gant's *prima facie* retaliation claim.

## III.    Discussion

Title VII prohibits retaliation against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII]," or because the employee "has made a charge, testified, assisted, or participated in any manner in an

4

investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); see also Selby v. Tyco Healthcare Group, L.P., 301 Fed. Appx. 908, 912 (11th Cir. 2008). Courts analyze claims pursuant Section 1981 and the FCRA under the same framework as Title VII claims. Selby, 301 Fed. Appx. at 912 (analyzing Section 1981, Title VII, and FCRA claims under identical framework); see also Medina v. United Christian Evangelistic Ass'n, No. 08-22111-CIV, 2009 WL 653857 at *7 (S.D. Fla. Mar. 10, 2009) (analyzing FCRA and Title VII claims together because the FCRA was patterned after Title VII, and Florida courts have construed the FCRA in accordance with decisions of federal courts interpreting Title VII.). Accordingly, Gant's claims pursuant to Title VII, Section 1981, and the FCRA will be analyzed under the Title VII framework only.

### A.    Title VII Retaliation

To state a *prima facie* case for retaliation, the plaintiff must demonstrate (1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that a causal connection exists between the protected activity and the adverse employment decision. Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). Failure to demonstrate any of these elements is fatal to the plaintiff's case. If the plaintiff establishes a *prima facie* case for retaliation, the defendant may rebut the presumption by "articulat[ing] a legitimate, nonretaliatory reason for the challenged employment action." Selby, 301 Fed. Appx. at 912 (quoting Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261

at 1277 (11th Cir. 2008)).  If the employer succeeds in discharging this light burden, the plaintiff will survive summary judgment only by demonstrating that the proffered reason was mere pretext for prohibited retaliatory conduct.  Id. (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-56 (1981)).

Sweetbay argues that Gant fails to demonstrate a *prima facie* case of retaliation both because Gant did not participate in a protected activity and because no causal connection exists between any protected activity and the adverse employment decision.  Neither party disputes that her termination was an adverse employment decision for the purpose of the second prong of the *prima facie* case.  Next, Sweetbay proffers a purported legitimate, non-discriminatory reason for terminating Gant.  Gant disputes Sweetbay's contention that she fails to state a *prima facie* case and offers evidence to demonstrate that Sweetbay's proffered reasons for terminating her are mere pretext.

**B.**      **The *Prima Facie* Case**

To survive summary judgment, Gant must demonstrate that she engaged in protected activity when she complained about Price's conduct, that she suffered an adverse employment decision, and that a connection exists between her complaint and the adverse employment decision.

**1.**      **Protected Activity**

The first prong of a Title VII *prima facie* case requires the plaintiff to demonstrate that she engaged in a protected activity. Title VII prohibits an employer's punishing an employee who complains about behavior prohibited by Title VII. 42 U.S.C. § 2000e-3(a). "Title VII protects not just individuals who have filed formal complaints, but also those who informally voice complaints to their superiors." Shannon v. Bellsouth Tels., Inc., 292 F.3d 712, 716 n.2 (11th Cir. 2002) (quotations omitted); see also Rollins v. Fla. Dept. of Law Enforcement, 868 F.2d 397, 400 (11th Cir. 1989). However, to engage in protected activity, the plaintiff must reasonably believe that the underlying conduct was severe enough to violate Title VII. Id.; see also Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311-12 (11th Cir. 2002) (a plaintiff "must show that she had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." (internal quotation marks omitted)); Little v. United Tech., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997) (plaintiff's belief about allegedly unlawful employment practices must be "objectively reasonable in light of the facts and record presented"). Accordingly, a plaintiff must demonstrate both that she subjectively believed that the employer was engaged in unlawful employment practices and that her belief was objectively reasonable in light of the facts and record presented. Little, 103 F.3d at 960 (holding employee's belief that a racially derogatory remark by a co-employee constituted unlawful discrimination under Title VII was not reasonable and thus his complaint concerning the comment was not protected activity);

Standard v. ABEL Sevs., Inc., 161 F.3d 1318, 1328-29 (11th Cir. 1998) ("[T]o satisfy the first element of the *prima facie* case [of retaliation under the ADA], it is sufficient that an employee have a good faith, objectively reasonable belief that his activity is protected by the statute."). If the employee's belief is not both objectively reasonable and in good faith, the complaint does not constitute protected activity. Little, 103 F.3d at 960; Standard, 161 F.3d at 1329.

Therefore, although Gant need not demonstrate that Price's conduct actually violated Title VII, Gant must demonstrate the objective reasonableness of her belief that Price's conduct was unlawful "in light of the facts and record presented." Little, 130 F.3d at 960. Courts must measure against existing substantive law the objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice. Clover v. Total Sys. Serv., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999). Racial harassment is actionable under the law where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.[12] Freeman v. City of Riverdale, No. 08-15230, 2009 WL 1510275 at *1 (11th Cir. Jun. 1, 2009); see also Rojas v. Fla, 285 F.3d 1339, 1344 (11th Cir. 2002) ("To establish that a workplace constitutes a 'hostile work environment,' a plaintiff must show that 'the workplace is permeated with

---

[2] The legal analysis applicable to a charge of racial harassment is analogous to the standards applied to "hostile environment" sexual harassment. Sims v. Montgomery County Com'n, 766 F.Supp. 1052 (M.D. Ala. 1990).

discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'") (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 20 (1993)); Vance v. S. Bell Tel. & Tel. Co., 863 F.2d 1503, 1510-11 (11th Cir. 1989).

Courts determine whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 788-89 (1998) (quoting Harris, 510 U.S. at 23); see also Freeman, 2009 WL 1510275 at *1 (quoting Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)). The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788. As Faraghar explained, "[t]hese standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" Id. "Properly applied, [the standards] will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" Id. (citing B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992)). Even if objectionable or offensive, "simple teasing,

offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id.

A single utterance or occasional objectionable and offensive conduct is insufficient to create a hostile work environment. See, e.g., Wilson v. Farley, 203 Fed. Appx. 239 (11th Cir. 2006); Faragher, 524 U.S. at 788; Walker v. Ford Motor Co., 684 F.2d 1355, 1359 (11th Cir. 1982) (stating that "the mere utterance of an ethnic or racial epithet" does not rise to the level of actionable harassment); Johnson, 646 F.2d at 1257 (finding no Title VII violation where the racial slur "nigger" was used infrequently in casual conversations in the workplace and was generally not directed at the plaintiff because, in order for racial comments to be actionable, "more than a few isolated incidents of harassment must have occurred"); Swenson v. Potter, 271 F.3d 1184, 1195 (9th Cir. 2001) (finding that sixteen 16 sexually charged comments over the course of fourteen 14 months did not constitute severe and pervasive harassment). However, "the frequent and consistent use of offensive language weighs in favor of a plaintiff's hostile work environment claim." See Miller, 277 F.3d at 1276 (ethnic slurs directed at the plaintiff three to four times daily is severe and pervasive); Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000) ("roughly fifteen separate instances of [severe sexual] harassment over the course of four months" was sufficiently frequent).

In <u>Wilson</u>, the plaintiff alleged that a co-worker remarked that he "was tired of [plaintiff's] 'black ass.'" <u>Wilson v. Farley</u>, 203 Fed. Appx. 239, 244 (11th Cir. 2006). The court found that the single derogatory remark was "insufficient to serve as a basis for a discrimination charge where [the co-worker] was merely [plaintiff's] co-worker, rather than his supervisor, and, thus, [the] conduct could not be attributed to the [defendant]." <u>Wilson</u>, 203 Fed. Appx. at 247 (citing <u>Little</u>, 103 F.3d at 965-60, where the court concluded that a co-worker's single racially offensive remark was not attributable to the employer, and, thus, the plaintiff's opposition to it did not constitute opposition to an unlawful employment practice under Title VII). Similarly, in <u>McCann</u>, the Eleventh Circuit held that an African-American employee's complaints that one white co-worker called her "girl" and called two other African-American employees "boys" and that another white co-worker referred to another African-American employee as a "nigger bitch" do not amount to severe or pervasive harassment because "[a]lthough offensive, such instances of racially derogatory language alone,   . . . [were] too sporadic and isolated to establish that her employers' conduct was so objectively severe or pervasive as to alter the terms and conditions of her employment." <u>McCann v. Tillman</u>, 526 F.3d 1370, 1379 (11th Cir.), <u>cert</u>. <u>denied</u>, 129 S.Ct. 404 (2008).

In the light most favorable to Gant and assuming that Price conducted himself exactly as Gant alleges, Price's conduct failed to create an objectively abusive or hostile working

environment pursuant to Eleventh Circuit case law.  Gant worked with Price for less than four months and as a co-worker, not a subordinate.  Conduct by a co-worker is less likely to be actionable harassment because unlike a supervisor, a co-worker usually does not have the opportunity to exert influence on or exercise authority over another of equal rank.  See Wilson, 203 Fed. Appx. at 247; Little, 103 F.3d at 965-60.  Gant complained that Price made two racially charged comments in her presence: one including the especially incendiary racial epithet "niggers"; the other including the term "ghetto."  However offensive the term, a single or occasional use of a racial epithet is not sufficient to qualify as objectively severe or pervasive conduct.  See, e.g.,  Walker, 684 F.2d at 1359; Johnson, 646 F.2d at 1257.

The Court recognizes that Price's comments were offensive and that use of racial epithets in general is highly offensive.  However, by itself, occasional use of even the most incendiary epithets fails to result in actionable conduct.  See, e.g., Brown v. Progress Energy, No. 8:07-cv-1599-T-26TGW, 2009 WL 212426 at *3 (M.D. Fla. Jan. 29, 2009) ("Although the racial epithets were offensive, such conduct . . .did not rise to the level of severity needed to create a hostile work environment."); Harrington v. Disney Reg'l Entertainment, Inc., 276 Fed.Appx. 863 (11th Cir. 2007) (although offensive, occasional use of term "ghetto" did not amount to actionable conduct for racial harassment claim); Joseph v. Fla. Quality Truss Indus., Inc., No. 05-61045-CIV, 2006 WL 3519095 at *10 (S.D. Fla. Dec. 6, 2006) ("the

mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII.").

In addition, Gant complains of three unspecific reports of being "aware" of racially charged comments or behavior, including Price's referring to an African-American employee as having a "ghetto booty," his commenting that another African-American employee's hair style was more appropriate for the "MLK" store, and his asking an employee to watch only African-American customers to protect against stealing.

Looking at all the circumstances Gant alleges, including the frequency of Price's conduct; the severity of Price's conduct; whether Price's conduct was physically threatening or humiliating, or a mere offensive utterance; and whether Price's conduct unreasonably interfered with Gant's work performance, the Court finds that no hostile work environment existed. Price's conduct, although offensive, was neither frequent, threatening, nor humiliating. Further, Price's conduct failed to interfere with Gant's work performance. Although odious, the totality of the alleged conduct fails to constitute frequent or severe discriminatory conduct. Accordingly, neither any single incident nor the totality of the conduct created an abusive or hostile working environment that changed the terms and conditions of Gant's employment. Accordingly, Gant's complaints that Price's conduct

constituted racial discrimination were not objectively reasonable and, thus, not protected activity.[3]

Accordingly, Gant fails to demonstrate the first prong of the *prima facie* case and cannot survive summary judgment. Nevertheless, the Court will conduct an analysis of the remaining elements of the *prima facie* case as well as affirmative defense offered by Sweetbay.

### 2.    Adverse Employment Action

Sweetbay concedes that Gant's termination qualifies as an adverse employment action. Accordingly, Gant meets this element of her *prima facie* retaliation case.

### 3.    Causal Connection

To demonstrate a causal connection, Gant must demonstrate that the Sweetbay decision maker, Gamble, was aware of the protected activity and that the protected activity and the adverse action were not wholly unrelated. Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1457 (11th Cir. 1998); McCann, 526 F.3d at 1376. "[C]lose temporal proximity may be sufficient to show that the protected activity and the adverse [employment] action were not wholly unrelated." McCann, 526 F.3d at 1376 (quotation marks and citation omitted). However, "merely showing that the alleged adverse action occurred sometime

_____

[3] Because the Court ultimately finds that Gant's belief is objectively unreasonable, the Court declines to discuss whether Gant acted in good faith. However, the court finds no evidence to suggest that Gant did not act in good faith.

after the protected expression does not establish the causation element-for temporal progression to be enough, the events must be in 'very close' proximity." <u>Davis v. Coca-Cola Bottling Co. Consol.</u>, 516 F.3d 955, 978 n.52 (11th Cir. 2008) (citations omitted).

Gant argues that causation is established by (1) the temporal proximity of her termination and her complaint, (2) evidence that Sweetbay decisions maker Gamble knew of her complaint prior to terminating her, and (3) evidence that she was terminated for conduct related to her complaint.  Sweetbay argues that temporal proximity alone cannot satisfy the causation element.

The one month interval between Gant's complaint and her termination is sufficiently close by itself to find causation.  <u>See</u>, <u>e.g.</u>, <u>Embry v. Callahan Eye Found. Hosp.</u>, 147 Fed. Appx. 819, 830-31 (11th Cir. 2005) (concluding that two month and three day period was sufficient to show causation for purposes of *prima facie* case); <u>Higdon v. Jackson</u>, 393 F.3d 1211, 1220-21 (11th Cir. 2004) (noting that a one-month gap would suggest a causal relationship, but refusing to recognize a three-month proximity between the protected activity and the adverse employment action as sufficient proof of causation).  However, causation here is not proved by temporal proximity alone.  Gant offers evidence other than temporal proximity and satisfies the causation element of her *prima facie* case.  Sweetbay District Manager Gamble terminated Gant approximately one month after learning of her complaint against Price.  Both parties agree that Sweetbay's stated reason for terminating

Gant was conduct unbecoming of a manager. Specifically, Sweetbay claims that Gant divulged confidential information about her complaint in violation of strict Sweetbay policy. The undisputed evidence establishes that Gamble, the decision maker, knew of Gant's complaint. Further, Gant was terminated for conduct directly related to her complaint. Accordingly, Gant establishes that the decision maker was aware of Gant's complaint and that the termination was not unrelated to her complaint.

Accordingly, if Gant had demonstrated that she had engaged in protected activity, Gant would have demonstrated a *prima facie* case for retaliation.

### C.       Burden Shifting Analysis

If a Title VII plaintiff establishes his *prima facie* case, the burden shifts to the employer to rebut the presumption by offering a legitimate, nondiscriminatory reason for its actions. <u>Sullivan v. Nat'l R.R. Passenger Corp.</u>, 170 F.3d 1056, 1059 (11th Cir. 1999). If the employer rebuts the presumption of retaliation, the burden shifts back to the plaintiff to demonstrate that the employer's reason is a pretext for retaliatory conduct. <u>Sullivan</u>, 170 F.3d at 1059. Accordingly, if Gant had satisfied her *prima facie* case for retaliation, Sweetbay could have rebutted the presumption by demonstrating a legitimate, non-discriminatory reason for her termination and Gant would have had to demonstrate that the proffered reason was pretextual. Even though Gant failed to demonstrate a *prima facie* case, the Court will conduct the burden shifting analysis.

**1. Legitimate, Non-discriminatory Reason for Adverse Employment Decision**

In anticipation of the possibility that the Court could have found that Gant had demonstrated a *prima facie* case, Sweetbay proffered a legitimate, non-discriminatory reason for Gant's termination: Gant violated a company policy. The burden of rebuttal is "exceedingly light," and the employer "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." Weston-Brown v. Bank of America Corp., 167 Fed. Appx. 76, 80 (11th Cir. 2006) (quoting Cooper v. S. Co., 390 F.3d 695, 725 (11th Cir. 2004), overruled on other grounds, Ash v. Tyson Foods, Inc., 546 U.S. 454, 457 (2006); see also Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769-70 (11th Cir. 2005) (employer's burden is exceedingly light, and is satisfied as long as employer articulates clear and reasonably specific non-discriminatory basis for its actions).

The defendant's burden "serves simultaneously to meet the plaintiff's *prima facie* case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-56 (1981). "[I]t is not the role of federal courts to second-guess the hiring decisions of business entities." Schoenfeld v. Babbitt, 168 F.3d 1257, 1269 (11th Cir. 1999) (citing Nix v. WLCY

Radio/Rahall Comms., 738 F.2d 1181, 1187 (11th Cir. 1984) ("The reason offered by an employer for an action does not have to be a reason that the judge or jurors would act on or approve. Instead, all that matters is that the employer advance an explanation for its action that is not discriminatory in nature." (internal citation and quotations omitted)).

If Gant had successfully demonstrated a *prima facie* case for retaliation, Sweetbay's proffered legitimate, non-discriminatory reasons for terminating Gant would have met the burden of rebuttal. The record demonstrates that Sweetbay has articulated sufficient race-neutral justifications for its actions. Sweetbay contends that it terminated Gant for violating a strict confidentiality policy with regard to internal investigations. Corbitt v. Home Depot U.S.A., Inc., No. 08-12199, 2009 WL 1981383 at *19 (11th Cir. Jul. 10, 2009) (violations of code of conduct sufficient legitimate, nondiscriminatory reason); Johnson v. Publix Super Markets, Inc., No. 404CV394-RH/WCS, 2005 WL 1876164 at *4 (N.D. Fla. Aug. 8, 2005) (violation of company policy sufficient legitimate, nondiscriminatory reason); Moreland v. Miami-Dade County, 255 F.Supp.2d 1304, 1315 (S.D. Fla. 2002) (violation of county rule sufficient nondiscriminatory reason).

Accordingly, the burden would then have shifted to Gant to demonstrate that the proffered reasons for her termination were mere pretext for retaliatory conduct

### 2. Pretext

If the employer rebuts the presumption of retaliation, the plaintiff must then demonstrate that the employer's reason is a pretext for retaliatory conduct. <u>Sullivan</u>, 170 F.3d at 1059. "To show that the employer's reasons were pretextual, the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." <u>Combs v. Plantation Patterns, Meadowcraft, Inc.</u>, 106 F.3d 1519, 1528 (11th Cir. 1997).

Accordingly, Gant would have had to demonstrate that Sweetbay's reason for terminating her was mere pretext for retaliation. The United States Supreme Court has held that, in attempting to prove pretext, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000). "A plaintiff raises a genuine issue of material fact concerning pretext if the plaintiff casts sufficient doubt on the defendant's proffered non-retaliatory reasons to permit a reasonable fact finder to conclude that the employer's proffered reasons were not what actually motivated its conduct but were pretext for retaliation." <u>Corbitt</u>, 2009 WL 1981383 at *19 (citing <u>Crawford v. Carroll</u>, 529 F.3d 961, 976 (11th Cir. 2008) and <u>Combs</u>, 106 F.3d at 1528). The trier of fact

is permitted to "consider the evidence establishing the plaintiff's *prima facie* case" in determining whether the defendant's explanation is pretextual.[4] <u>Reeves</u>, 530 U.S. at 143.

Gant argues that Sweetbay's proffered reasons for her termination are pretext for a retaliatory motive. Sweetbay claims to have terminated Gant for violation of a confidentiality policy and claims to have provided that policy while discussing Gant's claim against Price. Gant argues that she never received the policy. Gant argues that the issue of fact concerning whether she received the confidentiality policy is sufficient to demonstrate pretext. However, even if evidence demonstrated that Gant never received the confidentiality policy, that fact is insufficient to demonstrate pretext. <u>See</u> <u>Nix</u>, 738 F.2d at 1187 ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."). Title VII does not require "the employer to have good cause for its decisions." <u>Id</u>. "While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination." <u>Id</u>. (citation omitted); <u>see also</u> <u>Rojas</u>, 285 F.3d at 1344 (Title VII does not permit courts to sit in judgment of "whether a business decision is wise or nice or accurate.").

---

[4] Having already determined that Gant fails to establish a *prima facie* case, the Court analyzes Gant's demonstration of pretext without considering Gant's *prima facie* case.

Further, Gant argues that in seven years no other employee has been terminated for the same policy violation. Corbitt, 2009 WL 1981383 at *22 (finding that jury could find pretext where evidence existed that the policy violation that served as the basis for the proffered reason for termination was not a terminable offense). However, this alone is insufficient to demonstrate not only that the reasons for her termination were untrue but also that her termination was motivated by retaliation. A plaintiff must demonstrate by the preponderance of the evidence that the proffered reasons for her termination were false. That no other employee had been terminated for the same violation is insufficient without a showing that similarly situated employees behaving like Gant were treated differently. See Corbitt, 2009 WL 1981383 at *22 (requiring a "comparator" employee who is similarly situated "in all relevant respects" before permitting a court to "second-guess[] a reasonable decision by the employer." (quotations omitted)).

Accordingly, even if she had demonstrated her *prima facie* case, Gant would have failed to demonstrate that Sweetbay's proffered legitimate, nondiscriminatory reason for her termination were mere pretext for retaliation. Accordingly, Gant cannot survive summary judgment.

## IV.    Conclusion

Because Gant failed to establish her *prima facie* case of retaliation, the Motion for Summary Judgment will be **GRANTED**.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED** that:

(1)     The Motion for Summary Judgment (Doc. 33) is **GRANTED**.

(2)     The Clerk is directed to enter Judgment in favor of Defendant Kash n' Karry Food

Stores, Inc. d/b/a/ Sweetbay Supermarkets and against Plaintiff Natika Gant.

(3)     The Clerk is directed to **CLOSE** this case and terminate all pending motions.

**DONE** and **ORDERED** from Chambers in Tampa, Florida on this 17th day of July

2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:     Counsel of Record